

Jerry Capeci

**Gang Land News** — Real Stuff About Organized Crime

...on's foremost **EXPERT** on the American Mafia

| Home | This Week | Capeci's Books | Archives | Log In | Search |

# This Week in Gang Land
### May 24, 2018

**By Jerry Capeci**

## Sovereign District Of NY 'Retrains' All Its Prosecutors On 55-Year-Old Rule Of Law



GANG LAND Exclusive

In a stunning disclosure after months of complaints from defense lawyers and federal judges, the Manhattan U.S Attorney's Office has admitted that prosecutors (AUSAs) in its *Violent And Organized Crime* unit have been wrongly withholding favorable defense evidence they should have been giving defendants awaiting trial for murder and other major crimes.

Geoffrey Berman G L

Lisa Zornberg, a top prosecutor for U.S. Attorney Geoffrey Berman, stated in court last Thursday — the day trial had been set to begin for two defendants charged with killing a government witness in 2016 — that prosecutors in that case and two others had made "inexcusable errors" and withheld so-called *Brady Material* due to "inadvertence, sloppiness, and thoughtlessness."

Judge Alison Nathan had called Zornberg, *Chief of the Criminal Division*, on the carpet a day earlier when Nathan got what she called an "extraordinary" letter from prosecutors. In a filing, they admitted "several mistakes" in not telling the defense that the government had gotten information a week after the murder that another suspect had confessed a role in it, and had implicated several others, but not the defendants.

Before giving Zornberg the floor, Nathan stated that "a fair number" of other judges "agree that it was a rather extraordinary statement" and that "the credibility of these assistants in particular and the office in general on that score has taken a serious hit, not only with me but with many of my colleagues who are aware of this case," as well as two others the judge did not identify.

As four other top prosecutors, including deputy U.S. attorney Robert Khuzami, sat quietly in the spectator section, Zornberg stated that "to make sure that errors don't happen again" she had "led an internal training for unit chiefs" last week and ordered the immediate retraining of "every AUSA in the criminal division" about the need "to do the right thing" in every case.

"This is not an event in which we celebrate. This is not the finest hour of the office," said Zornberg, who was much more subdued than she was in her mob-


Lisa Zornberg G L

busting days <u>eight years ago</u> when then-*Village Voice* columnist Tom Robbins dubbed her a "<u>tiny tornado</u> of a prosecutor."

"I want to assure the Court that to the highest levels of the office, myself, the U.S. Attorney, all those present in the back of the courtroom today, we take this with utmost seriousness," she said. "We regard it as a training issue," said <u>Zornberg</u>, adding that she "found no indication that any AUSA in this case or in the other two cases to which you referred, intentionally acted willfully to withhold information."

"The defense takes issue with the idea that this was merely an issue of training," countered attorney Elizabeth Macedonio, who represents a defendant indicted in March of 2017 for the murder of Robert Bishun on September 20, 2016, about a week before Bishun was slated to testify against Merlin Altson, an NYPD cop who was on trial for drug charges.

<u>Macedonio</u> noted that seven months before her client, Robert Pizarro, was indicted, the government had learned — a week after Bishun was killed — that an informant told a DEA agent "that he has obtained a detailed confession from" a drug dealer named Gabriel Guillen who "implicates not only himself but three other individuals" in the crime. The info was turned over this month, which precipitated the extraordinary pre-trial session last week.


Judge Alison Nathan

The attorney did not charge the prosecutors with knowingly withholding *Brady Material* they knew they had. But <u>Macedonio</u> came pretty close. She noted that Guillen and four others he named in the murder were later hit with drug charges, and that some of the AUSAs in that case are also prosecutors in the Pizarro case.

"During the course of our investigation the last couple of weeks," Macedonio continued. "I have come to learn that the attorneys in that case were told by some of the same prosecution members at this table that their clients were being investigated for a homicide."

"So we're taking issue with the idea that this is simply a matter of training," she said. "We have prosecutors at this table who were involved in both investigations, and we think at a minimum it was neglect to the extent that it raises a level of negligence that requires this Court to exercise its supervisory powers and dismiss the indictment," the lawyer said, adding: "Judge, there has to be at some point some deterrent, right?"


Elizabeth Macedonio

"There has to be deterrence," agreed Nathan, who stated it might be a question for <u>Zornberg</u> but never posed it to the prosecutor, noting that "these kinds of things do sometimes lead to OPR investigations" and that "there's consideration in Congress now as to bills to allow for civil lawsuits against prosecutors who withhold exculpatory information."

In their letter admitting "several mistakes" in not turning over information about Guillen's confession and other *Brady Material* concerning a second cooperating witness, AUSAs Jessica Finder, Jared <u>Lenow</u> and Jason <u>Swergold</u> wrote that "the appropriate remedy for the Government's error" was an adjournment, not a dismissal of the indictment.

Judge Nathan agreed, and scheduled the trial of Pizarro and codefendant Juan Rivera for September 11.

The defense lawyers and prosecutors in the case all declined to comment. Zornberg, Khuzami, and Public Information officer James Margolin were also mum about the two other cases where AUSAs failed to live up to what Judge Nathan called their "Brady obligations." They were also close-lipped on whether the screw-ups would have any impact on the cases involving Guillen, or Alston, who was found guilty and sentenced to 20 years.

But numerous defense lawyers, and even a few prosecutors, were incredulous that prosecutors for the flagship U.S. Attorney's Office in the country, the so-called Sovereign District of New York, would need to be "retrained" about *Brady Material*, a basic rule that the U.S. Supreme Court put into the law books in 1963.



Jason Swergold GL

"*Brady Material* is anything that would be favorable information for a defendant, even if it's seemingly innocuous information about the credibility of a witness," said one federal prosecutor, adding, "That's not for you to decide."

"It's evidence known to the prosecution that is favorable to the defense," said a former federal prosecutor who is still a member of the law enforcement community.

"Retraining?" laughed one defense lawyer. "What the hell were they doing in law school. It's a basic rule."

"Retraining?" cracked another defense attorney. "It's simple: If you have it, you turn it over. You don't wait for me to ask for it. It's your obligation."

"Prosecutors have a completely different view of the world than we do," said another lawyer, who believes their actions are learned from their bosses. "They have a different interpretation of Brady. They don't have to give you any helpful information if they don't think that it's true. That's not what the Supreme Court says, that's not what the cases say, but that's what they say."

Stay tuned. We're pretty certain we've identified one of the two cases that Judge Nathan and Zornberg were discussing in court. It's one Gang Land has written about before, and we're hoping to flesh out the details next week.

