


**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 16, 2019

**By ECF**

The Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    United States v. Christian Dawkins and Merl Code, S1 17 Cr. 684 (ER)

Dear Judge Ramos:

      The Government respectfully submits this letter in further support of the Government's motion *in limine* seeking to preclude the defendant Christian Dawkins from raising an entrapment defense, and to respond to the defendants' opposition.[1] (Dkt.199, and referred to herein as "Def. Omnibus Oppn."). As set forth in the Government's opening brief, the evidence plainly refutes any claim that the Government induced defendant Dawkins to commit the charged offenses. And even assuming *arguendo* that Dawkins can meet his burden as to inducement, recorded meetings and phone calls of the defendant amply demonstrate that the Government will carry its burden of establishing the defendant's predisposition.

      As an initial matter, Dawkins has not identified any evidence that he was induced by the Government to commit the charged crimes. Dawkins points at most to evidence that the Government urged Dawkins to continue his crimes in May 2017. (Def. Omnibus Oppn. at 4). Dawkins asserts, without pointing to any evidence (since there is none) that "[t]he Government's own undercover agents and cooperating witness solicited Mr. Dawkins' involvement in a conspiracy *they devised* to pay bribes to college basketball coaches." (*Id.*). However, this is

---

[1] The Government has also moved to (1) preclude defendant Merl Code from raising an entrapment defense, (2) preclude the defendant from offering evidence related to uncharged coaches that the defendant did not attempt to bribe, including two head basketball coaches, (3) preclude the defendant from putting the NCAA rules on amateurism on trial, and (4) preclude the defendants from putting the Government's investigation on trial.

      With respect to those motions, the Government is prepared to rest principally on its opening brief, and notes, in particular, that defendant Merl Code has indicated that he "does not intend to advance an entrapment defense at trial," (Def. Omnibus Oppn. at 1, fn.1), which moots the Government's motion as to the entrapment defense as to him.

plainly contradicted by the defendant's own statements during recorded meetings and calls.  It was Dawkins (not a government agent) who introduced CW-1 and Sood to coaches prior to May 2017, starting with Lamont Evans in March 2016. (Complaint at ¶ 50).  It was Dawkins (not a government agent) who explained to Sood and CW-1 why to bribe coaches like Lamont Evans: "to get in bed with somebody like [Evans] now so you got complete access to a kid … because if the coach say nobody can come around – can't nobody fucking come around."  (*Id.* at ¶ 50(a)).  And it was Dawkins (not a government agent), who explained to Sood and CW-1 that he had previously paid at least one coach -- Evans  -- "for a couple of months."  (*Id.* at ¶ 51(b)).  These are just some of the statements contained in recordings that the Government will play at trial that will demonstrate that it was Dawkins who devised the scheme to pay bribes to coaches – not a government agent.

Second, even assuming *arguendo* that Dawkins can carry his burden of establishing inducement, the relevant meetings and calls prove that he was not entrapped because he was indisputably predisposed to commit the charged crimes.  The defendant's suggestion that his payments to coach Lamont Evans are not evidence of predisposition because he was just paying Evans "as a vehicle to deliver payments to the family of a student-athlete," and therefore the payments are "entirely dissimilar from the conduct charged in this case," (Def. Omnibus Oppn. at 8), is unsupported and belied by the very recordings mentioned above.  For example, when Dawkins introduced Sood and CW-1 to Evans, it was Dawkins who explained to Sood and CW-1 that the "good thing about fucking with a college coach," was that there would be "good players every year," to which Evans concurred, responding that it "keeps the relationship." (Complaint at ¶ 50(b)).  In other words, it was Dawkins who introduced the very concept of developing a financial relationship with coaches to CW-1 and Sood, belying any argument that he was not predisposed in that direction.[2]

---

[2] The defendants' suggestion that Dawkins was induced to pay coaches because UC-1 demanded that Dawkins pay them, and, even then, it was over Dawkins's own "objections," (Jt. Def. Oppn. at 4), misconstrues the evidence in the multiple ways.  As initial matter, the defendant's only support for that proposition in the opposition is the "July [sic] 28 call," a call from June 28, 2017, which was referenced at ECF No. 186 at 10, but that call occurred *after* Dawkins had already been involved in paying both Lamont Evans and Emanuel Richardson.  Further, from the full context of the call, Dawkins makes clear that he thinks "the model can work," (i.e., paying coaches for their influence), but his "objection" is over how to spend money wisely, and whether to give money up-front to coaches or in response to particular requests for money in connection with particular recruits, as reflected in this further excerpt from that very same call:

> DAWKINS: … Now, if you just want -- like I said, if you just wanna be Santa Claus and just give people money, well fuck, let's just take that money and let's just go to the strip club and just buy hookers.  Because, honestly, it's different, Jeff [UC-1], if you say to me, listen, Jeff needs -- Jeff is a coach, head of New Mexico State and he has a first-round pick, and he needs help getting some recruiting expenses, well then that's a worthwhile investment.  ….

At a minimum, the Court should reserve decision and not permit defense counsel to raise an entrapment defense or use the word "entrapment" in their opening arguments, before the introduction of any evidence on the issue. In this respect, Judge Sweet's recent decision in *United States v. Woolaston*, 18 Cr. 212 (RWS), is instructive. (*See* Feb. 7, 2019 Final Pretrial Conference, Transcript at 4:10, attached as Exhibit A). There, the defense indicated it would be eliciting evidence to support an entrapment defense through cross examination of the Government's witnesses, but the court precluded the defense from raising an entrapment defense until it had actually elicited such evidence. *See* Ex. A at 4:10 ("There won't be any discussion of it [entrapment] in opening.")). Further, the Government requested that Judge Sweet draw a line between permitting the defense to talk about a Government sting, and making "statements to the jury like 'Because the government set up this transaction, the defendant is not guilty.'" (*Id.* at 16:14-17). The Government argued that such statements would be an "inaccurate statement of the law as it applies to an entrapment defense and would be misleading." (*Id.* at 17-19). Judge Sweet agreed. (*Id.* at 20). Only after defense counsel elicited a sufficient factual predicate for an entrapment defense at trial, did Judge Sweet instruct the jury on entrapment, and permit defense counsel to argue entrapment in closing.

For the reasons set forth herein, and in the Government's opening brief, the Government respectfully submits that the Court should preclude the defendants from raising an entrapment defense. In the alternative, the Court should order Dawkins to refrain, in his opening statement, from raising entrapment or suggesting that Dawkins is not guilty because the Government initiated, induced and/or devised the scheme.

                                      Respectfully submitted,

                                      GEOFFREY S. BERMAN
                                      United States Attorney

By:        /s/
                                      Robert L. Boone/Noah Solowiejczyk
                                      Eli J. Mark
                                      Assistant United States Attorneys
                                      (212) 637-2208/2473/2431

cc: Defense counsel (by ECF)