# UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
  :
UNITED STATES OF AMERICA,                                        :
  :
  v.                                                             :
  :
MERL CODE, and                                                   :  Case No. 17-cr-00684-ER
CHRISTIAN DAWKINS,                                               :
  :
  Defendants.                                                    :
  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MOTION TO COMPEL THE PRODUCTION OF RECORDS RELATED TO POTENTIAL BENEFITS PROVIDED TO GOVERNMENT WITNESS MARTIN BLAZER

**NEXSEN PRUET LLC**
William W. Wilkins
Mark C. Moore
Andrew A. Mathias
55 E. Camperdown Way, Suite 400
Greenville, South Carolina 29601
(864) 370-2211

**HANEY LAW GROUP PLLC**
Steven A. Haney
3000 Town Center Drive, Suite 2570
Southfield, Michigan 48075
(248) 414-1470

*Attorneys for Defendant Christian Dawkins*

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
Merl F. Code
300 North Main Street
Greenville, South Carolina, 29601
(864) 271-1300

**CHANEY LEGAL SERVICES, LLC**
Allen Chaney
Post Office Box 616
Longmont, Colorado 80502
(720) 634-5493

*Attorneys for Defendant Merl Code*

Defendants Christian Dawkins and Merl Code ("Defendants") move to compel the Government to produce any and all records related to any financial or monetary benefits provided to Government witness Martin Blazer during the time period that he worked as an undercover operative for the Federal Bureau of Investigation ("FBI") and the Department of Justice ("DOJ"). The defense has sought this information from the Government in an attempt to resolve this matter without the necessity of filing a motion. These attempts to resolve the issue have been unsuccessful as the Government has taken the position that travel expenses or reimbursements made to Mr. Blazer are not "benefits"; the Government has not directed the defense to any authority that supports this positon and, as of the time of this filing, has not responded to our most recent request—a request which contained citations to many of the cases referenced in this filing.

Mr. Blazer is native of Pittsburgh who engaged in serial acts of fraud over at least a four year period (2009-2013). He entered a plea of guilty to a five count felony information on or about September 15, 2017. Upon information and belief, he began cooperating with the FBI in an attempt to earn favorable treatment and he worked as an undercover operative for several years. In his role as an undercover informant, he traveled around the country at the behest of the FBI, visiting multiple cities including New York and Las Vegas where he participated in meetings with various persons, some of whom were eventually charged in the related series of cases that resulted in the instant prosecution. While in New York, he participated in at least one undercover meeting held on a yacht, and he has reportedly stayed at high-end hotels while working for and at the direction of the FBI.  Despite the fact that Mr. Blazer is expected to be called next week as a Government witness, the Government has declined to provide any records concerning travel or

other reimbursements paid to Mr. Blazer and has declined to identify which portions (if any) of his informant-related travel was paid for by the Government.

## ARGUMENT

### A. *Brady* and *Giglio* Generally

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that the Due Process Clause requires the Government to disclose to a criminal defendant all material, exculpatory evidence in its possession. *See generally Strickler v. Greene*, 527 U.S. 263, 280-82 (1999). "Brady's disclosure requirements extend to materials that, whatever their other characteristics, may be used to impeach a witness." *Strickler,* 527 U.S. at 282 n. 21 (citing *United States v. Bagley,* 473 U.S. 667, 676, 105 S. Ct. 3375 (1985)); *see also Kyles v. Whitley*, 514 U.S. 419 (1995).

Under *Brady* and its progeny, the prosecution's failure to disclose evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.  Evidence is "favorable" not only when it would tend to exculpate the accused, but also where it can be used to impeach government witnesses. *United States v. Ellis*, 121 F.3d 908, 914 (4th Cir. 1997) (internal citations omitted).  The Government does not have discretion to decide the weight to be placed on the favorable material in calculating whether to comply with its obligation to produce such material. Rather, the Government "must always produce any potentially exculpatory or otherwise favorable evidence," because it is irrelevant "whether the government thinks that disclosure of the information or evidence . . . might change the outcome of the trial going forward." *United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005). "In fact, the [Supreme]

Court has recognized that 'if disclosed and used effectively, [impeachment evidence] may make the difference between conviction and acquittal.'" *Spicer v. Roxbury Corr. Inst*., 194 F.3d 547, 556 (4th Cir. 1999) (quoting *United States v. Bagley*, 473 U.S. 667, 676, (1985)).

Under Federal Rule of Criminal Procedure 16(a)(1)(E)(i), the Government must make available to a defendant any requested items that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i); *United States v. Caro,* 597 F.3d 608, 621 (4th Cir. 2010). A showing of materiality under this rule requires "some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor." *Caro*, 597 at 621 (quoting *United States v. Ross*, 511 F.2d 757, 763 (5th Cir.1975), *cert. denied*, 423 U.S. 836, 96 S. Ct. 62). "[E]vidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Caro*, 597 at 621 (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C.Cir.1993)); *see also United States v. Wilford*, 961 F. Supp. 2d 740, 756 (D. Md. 2013), *on reconsideration in part* (Nov. 27, 2013), *aff'd*, 689 F. App'x 727 (4th Cir. 2017) (granting a defendant's motion for disclosure of evidence to the extent that defendant sought information material to a motion to suppress, noting that it might alter the "quantum of proof" in defendant's favor if the suppression motion were successful). In *United States v. Triumph Capital Grp., Inc*., 544 F.3d 149, 161 (2d Cir. 2008), the Second Circuit held that the district court abused its discretion in denying a motion for a new trial, on the ground that the Government unconstitutionally suppressed material, exculpatory, and impeaching evidence, where the Government failed to produce an investigating agent's interview notes that contained information that was inconsistent with the Government's theory of the case. *Id.* at 161-165. The

court noted that, "a showing of materiality does not require demonstration by a preponderance of the evidence that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." *Id.* at 161.  Rather, a showing of materiality requires "only a showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.*

      B. The Department of Justices' Stated Views on its *Brady* and *Giglio* Obligations

Some ten years ago, the federal government's prosecution of Senator Ted Stevens imploded because the Government failed to abide by its discovery allegations. After the judge handling the case learned of these discovery abuses, he ordered a new trial—and DOJ ultimately decided to dismiss the charges and investigate and discipline the prosecutors who failed to abide by their duty to provide *Brady* and *Giglio* information to Senator Stevens and his counsel.

In the aftermath of the Stevens debacle, the DOJ announced sweeping changes to its discovery practices and required each United States Attorney's Office ("USAO") to develop a written discovery policy. USA Today ran a story on these new discovery polices (https://www.usatoday.com/story/news/2015/03/03/justice-department-discovery-policies-released/24239225/) after obtaining copies of most of the new polices from USAOs around the country.

The DOJ's discovery policies are generally set out in Section 9.5000 of its Justice Manual. (https://www.justice.gov/jm/jm-9-5000-issues-related-trials-and-other-court-proceedings). Section 9.5002 directs prosecutors to gather and review all *Gigilo* information related to non-law enforcement witnesses and provides a non-exhaustive list of the type of

information that must be reviewed, including but not limited to benefits provided to the witness. This language expressly includes monetary benefits.

DOJ's stated policy includes the following language:

The Department's disclosure obligations are generally set forth in Fed.R.Crim.P. 16 and 26.2, 18 U.S.C. §3500 (the Jencks Act), Brady, and *Giglio* (collectively referred to herein as "discovery obligations"). Prosecutors must familiarize themselves with each of these provisions and controlling case law that interprets these provisions. In addition, prosecutors should be aware that Section 9-5.001 details the Department's policy regarding the disclosure of exculpatory and impeachment information and ***provides for broader disclosures than required by Brady and Giglio***. Prosecutors are also encouraged to provide discovery broader and more comprehensive than the discovery obligations. If a prosecutor chooses this course, the defense should be advised that the prosecutor is electing to produce discovery beyond what is required under the circumstances of the case but is not committing to any discovery obligation beyond the discovery obligations set forth above.

U.S. DOJ Justice Manual § 9.5002 ("Step 3: Making the Disclosures") (emphasis added).

The USAO for the Southern District of New York has adopted its own DOJ-mandated discovery policy which generally tracks DOJ policy and requires the disclosure of information relating to benefits provided to witnesses. Neither the DOJ policy nor the SDNY policy appears to define the term "benefit"—perhaps because it seems obvious that anything of value constitutes a benefit. However, a number of federal courts have broadly interpreted that term and either mandated the disclosure of even intangible benefits or have taken the Government to task for its deliberate failure to disclose the benefits it provided to its cooperating witnesses.

C. Examples of Discoverable Benefits

In a well-publicized decision granting a defense motion for a new trial, United States District Judge James Holderman of the Northern District of Illinois granted a defense motion for new trials in a series of cases based on a multiple *Giglio* failures (including but not limited to

- 5 -

undisclosed benefits provided to cooperating inmates who testified against alleged members of

the El-Rukn street gang. *See United States v Burnside*, 824 F. Supp. 1215 (N.D. Ill. 1993). The

undisclosed benefits included contact visits at the USAO, lax security, improper telephone

services, sundries and sexual banter between inmates and a Government paralegal**.** *See also*

*Ambartsoumov v. Warden, Chillicothe Corr. Inst*., No. 2:12-CV-345, 2014 WL 3045304, at \*17

(S.D. Ohio July 3, 2014), *report and recommendation adopted*, No. 2:12-CV-345, 2014 WL

4805384 (S.D. Ohio Sept. 26, 2014) (quotin*g Burnside* and "noting that government counsel

cannot assert the 'ostrich' defense, i.e., claim 'ignorance of the facts—ignorance prompted by

the government lawyers closing their eyes to facts which should have prompted them to

investigate.").

    In *United States v. Martinez-Medina*, 279 F.3d 105, 117-118 (1st Cir. 2002), the First

Circuit noted in a section called "Payments to Witnesses" that:

> Gamaliel Goglas, the main witness implicating Martinez in the conspiracy, was
> paid $9,000 in return for his cooperation in the government's case. Goglas testified
> that he decided to cooperate with the  government because he began to fear for his
> life after he robbed $23,000 from Ventura and that the payments were for his
> security while in Puerto Rico (hotel and travel expenses) and for his relocation (a
> one-way ticket from Puerto Rico). DEA Agent Lugo corroborated this testimony,
> although he admitted mistakenly indicating on a DEA form that the payment was
> for "information." Angela Castro, another cooperating witness, was paid $10,000
> for relocation expenses for her and her husband. Martinez argues that these
> payments compromised the integrity of his conviction and violated the federal
> witness bribery statute, 18 U.S.C. § 201(c)(2) (1994). As to the statutory issue, it is
> entirely doubtful that 18 U.S.C. § 201(c)(2) applies at all to the government, but in
> all events Congress has explicitly authorized the Attorney General to provide for
> the relocation and protection of witnesses that may be in danger, *see* 18 U.S.C. §
> 3521 (1994) (Witness Relocation and Protection Act). It would be unreasonable to
> interpret 18 U.S.C. § 201(c)(2) as precluding a practice specifically authorized by
> a more specific and recent statute. *See, e.g., Morton v. Mancari*, 417 U.S. 535, 550–
> 51, 94 S. Ct. 2474, 41 L.Ed.2d 290 (1974). Certain inducements to government
> witnesses may compromise a defendant's fair trial right wholly apart from section
> 201(c)(2). But certainly security-related expenses are a legitimate part of a

prosecutor's arsenal, at least as long as certain procedural safeguards—*such as disclosure of the arrangement to the parties and cautionary jury instructions*—are maintained.

*Id.* (internal citations and quotations omitted) (emphasis added).

In *United States v. Shaffer*, 789 F.2d 682 (9th Cir. 1986), the Ninth Circuit held that the Government's disclosure of payment of expenses to a critical government witness in response to the defendant's request for exculpatory information was inadequate, where the defendant was unaware that the witness was also being paid expenses for his involvement in separate heroin investigation. 789 F.2d at 690. The closing paragraph of *Shaffer*, *id.* at 691, reads as follows:

> In sum, we hold that the district court did not abuse its discretion by concluding that the *Brady* information at issue in this case was material to Shaffer's defense and that the information had not been adequately disclosed. The government's failure to disclose the *Brady* information at issue in this case undermines our confidence in the outcome of Shaffer's trial. Accordingly, we affirm the district court's order granting Shaffer a new trial.

*Id.*

In *United States v. Sipe*, 388 F.3d 471, 488 (5th Cir. 2004), the Fifth Circuit observed:

> The government's failure to provide Sipe with a complete description of the benefits accorded the testifying aliens—Guevara, Sanchez, and Diaz—is much more troubling. In response to Sipe's interrogatories, the government stated in writing that the aliens were allowed to remain and work in the United States pending trial and specified that "no other promises or advantages" had been given. That was not true. The aliens were given other, significant benefits, including Social Security cards, witness fees, *permits allowing travel to and from Mexico, travel expenses, living expenses, some phone expenses, and other benefits.* They were essentially given all, and more, of the benefits they were arrested for trying to obtain illegally—benefits so valuable that they took great risks to obtain them by crossing the border illegally.

*Id.* (emphasis added); *see also Ali v. Grounds*, No. CV 14-0898 BAS (WVG), 2015 WL 13079247, at *39 (S.D. Cal. Mar. 16, 2015), *report and recommendation adopted*, 236 F. Supp.

3d 1241 (S.D. Cal. 2017) (describing moving and relocation expenses and assistance with rent as benefits received by a cooperating witness from law enforcement).

## **CONCLUSION**

Based on the foregoing, Defendants respectfully request that the Court order the Government to provide records of any and all benefits (including but not limited to reimbursements or "coverage" of travel expenses) during the time Mr. Blazer worked as an undercover operative for the FBI and the DOJ. Defendants specifically request that the Government be required to provide this information five (5) calendar days prior to calling Mr. Blazer as a witness—and if the Government declines to do so, Defendants request that the Court exercise its supervisory powers to exclude Mr. Blazer as a witness.

*[SIGNATURE PAGE FOLLOWS]*

Dated:  New York, New York
       April 18, 2019

**NEXSEN PRUET LLC**                    **HANEY LAW GROUP PLLC**

s/ Mark C. Moore                        s/ Steven A. Haney
William W. Wilkins                       Steven A. Haney
Mark C. Moore                           3000 Town Center Drive, Suite 2570
Andrew A. Mathias                       Southfield, Michigan 48075
55 E. Camperdown Way, Suite 400         (248) 414-1470
Greenville, South Carolina 29601
(864) 370-2211                          *Attorneys for Defendant Christian Dawkins*

**OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.**
Merl F. Code
300 North Main Street
Greenville, South Carolina, 29601
(864) 271-1300

**CHANEY LEGAL SERVICES, LLC**
Allen Chaney
Post Office Box 616
Longmont, Colorado 80502
(720) 634-5493

*Attorneys for Defendant Merl Code*