

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 18, 2019

**By ECF**

The Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re: *United States v. Christian Dawkins and Merl Code*,
           No. S1 17 Cr. 684 (ER)

Dear Judge Ramos:

    The Government respectfully submits this letter to move to preclude the defendants from (1) cross-examining a cooperating witness ("CW-1") regarding the amount of reimbursements he received from the Government for his expenses incurred in connection with his cooperation, and (2) cross-examining or arguing about the expense of the Government's investigation, which is irrelevant to the issues at trial and of, at best, minimal probative value under Rule 403 of the Federal Rules of Evidence.

    1. Background and Government Disclosures

    The Government assumes the Court's familiarity with the facts of the investigation, and only highlights the relevant facts to this motion. As pertinent here, and as previously disclosed to the defendants, CW-1 began cooperating with the U.S. Attorney's Office for the Southern District of New York ("USAO-SDNY") in or about 2014 and initially was supervised at the direction of a USAO-SDNY Special Agent. Beginning in or about late 2016, CW-1 was supervised at the direction of agents with the Federal Bureau of Investigation ("FBI"). During the period of his cooperation with the Government, CW-1 travelled and met with different subjects of the investigation and incurred routine travel and food expenses in doing so. Initially, while being supervised by the USAO-SDNY, CW-1 paid for all of his own expenses in connection with his cooperation. After the FBI agents began supervising him, the FBI paid for and/or reimbursed him for routine expenses that were related to the investigation, including

flights, hotels, and food.[1]  The FBI typically either made the flight and hotel reservations directly for CW-1 or reimbursed CW-1 for those expenses.  CW-1 did not incur expenses outside of the normal course.  For example, he flew coach during flights (not business class or first class).  To the extent that CW-1 stayed at a high-end hotel, in particular the Venetian in Las Vegas, while travelling to meet with subjects of the investigation, those determinations were made by the FBI – not CW-1 – for operational reasons, since he was acting in the role of a wealthy financial advisor.   CW-1 did not receive any compensation for his cooperation in the Government's case; rather, all money provided to CW-1 was to cover expenses incurred by CW-1 as directed by the FBI in connection with this investigation.

By emails dated April 16, April 17, and April 18, 2019, counsel for defendant Merl Code requested "all information in the government's possession," regarding "any payments for [CW-1's] expenses or otherwise (including but not limited to reimbursements for or coverage of his expenses while he was traveling)."  The Government replied, by email dated April 17, 2019, that the production of additional information is not required, since a "reimbursement is not a benefit to the cooperator, so it is neither *Giglio* nor grounds for impeachment."  Nonetheless, defense counsel has persisted in requesting additional back-up documentation and information on expense reimbursement, and earlier today filed a motion to compel these materials (Dkt. 217).  This suggests that the defendants plan to cross-examine CW-1 on this subject, and, potentially, also pursue a line of inquiry related to the costs incurred by the Government in connection with the investigation.

2. Discussion

As an initial matter, the Government has fully complied with its *Brady* and *Giglio* obligations in disclosing the arrangements with CW-1, including that, for a period of time while being supervised, his operational expenses were reimbursed by the FBI.  The Government has disclosed the arrangement for travel reimbursements for CW-1 in connection with discovery that was provided for in this case.  Defendant Code's request for additional information about the particular amounts of routine travel reimbursements finds no support under the facts of this case, and is not analogous to the examples cited in his motion to compel (Dkt. 217 at 5-7).  These are not payments to witnesses for services, which are regularly disclosed, nor lump-sum payments for relocation expenses, or other benefits provided to a cooperator that are not otherwise available, which are similarly discoverable.[2]   *Contrast United States v. Martinez-Medina*, 279 F.3d 105, 117-118 (1st Cir. 2002) (payments to witness for protection and relocation expenses); *Ali v. Grounds*, 14-cv-0898 BAS (WVG), 2015 WL 13079247, at *39 (S.D. Cal. Mar. 16, 2015), report and recommendation adopted, 236 F. Supp. 3d 1241 (S.D. Cal. 2017) (same).

---

[1] Like the Government does for federal employees while travelling, the FBI reimbursed CW-1 for meals and incidentals according to a per diem meals and incidental rate, as set by the U.S. General Services Administration.

[2] Although the Government maintains that such underlying FBI documentation regarding expense reimbursements is not appropriately discoverable, the Government has obtained and reviewed the relevant materials and is prepared to produce them if the Court so directs.

      Further, any cross-examination about the particular amount of reimbursement to CW-1 or the amount of money expended in connection with the investigation is completely irrelevant under Fed. Rule of Evid. 401, and, if it has any probative value at all, should be excluded under Fed. Rule of Evid. 403.  The exact amounts of money for reimbursements incurred by CW-1 while cooperating at the direction of the FBI have no bearing on CW-1's credibility, particularly where the expenditures being reimbursed were incurred by CW-1 only at the direction of law enforcement in connection with activities related to this investigation.  Nor is there any conceivable relevance of the costs of the Government's investigation to the guilt or innocence of the defendants – at least none of such probative value as to outweigh the risk of creating unnecessary confusion and delay and wasting time on wholly collateral matters.

                                            Respectfully submitted,

                                            GEOFFREY S. BERMAN
                                            United States Attorney

By:          /s/
                                            Robert L. Boone/Noah Solowiejczyk
                                            Eli J. Mark
                                            Assistant United States Attorneys
                                            (212) 637-2208/2473/2431

cc: Defense counsel (by ECF)