

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 12, 2021

**By ECF**

The Honorable Lewis A. Kaplan
The Honorable Edgardo Ramos
United States District Court
Southern District of New York
United States Courthouse
New York, New York 10007

    Re:    *United States v. Gatto*, 17 Cr. 686 (LAK)
             *United States v. Evans*, 17 Cr. 684 (ER)

Dear Judges Kaplan and Ramos:

    The Government respectfully submits this letter in opposition to defendant Christian Dawkins's motion dated February 19, 2021 (the "Defense Motion" or "Def. Mtn."), requesting that both Courts enter an order permitting the defendant to disclose in discovery in the civil case *Brian Bowen II v. Adidas America, Inc. et al.*, No. 18-cv-3118-JFA (D.S.C.) (the "Civil Case") discovery materials produced by the Government in the above-captioned cases. That application, which is joined by defendants Merl Code and James Gatto, all of whom are defendants in the Civil Case, as well as Brian Bowen II, the plaintiff in the Civil Case, should be denied.

    **A.  Relevant Background**

    As both Courts are aware, the Government produced voluminous discovery to the defendants, including Title III wiretap interceptions, consensual recordings, grand jury materials, and materials obtained by search warrants. In light of the sensitive nature of the discovery, the parties agreed to the entry of identical protective orders in both *Gatto* and *Evans*. Those protective orders provided that information designated as "Confidential Information," by the Government, and then "disclosed to the defendants or to their counsel during the course of proceedings in this action: (a) Shall be used by the defendants and their counsel *only for purposes of preparing for and conducting pretrial proceedings, trial, and/or any appeal of this action*." (No. 17 Cr. 686, Dkt. 128 (Second Amended and Restated Protective Order), ¶ 2(a).) (emphasis added). The orders further provided that all documents subject to the protective orders "must be destroyed or returned to the Government's attorneys at such time as they are not needed in this action, at the end of the criminal proceedings (including any appeal and related applications for *habeas corpus* or any other collateral relief), or upon Order of the Court, whichever occurs first." (*Id.* ¶ 2(d).) A portion of the materials previously designated as Confidential Information became public during the

The Honorable Lewis A. Kaplan
The Honorable Edgardo Ramos
March 12, 2021
Page 2

respective trials in both cases, and the defendants continue to maintain possession of the remaining discovery pursuant to the protective orders.[1]

Subsequent to trial in *Gatto*, Bowen II filed the Civil Case against the defendants and Adidas America, Inc., and others, alleging violations of the Racketeering Influenced and Corrupt Organizations Act based on the criminal scheme brought to light in the *Gatto* matter. (Def. Mtn. 3.) In the course of discovery in the Civil Case, according to the Defense Motion, Bowen II served requests for the production of documents on Dawkins that sought "among other things, responsive material that is also subject to the protective orders," and he subsequently filed a motion to compel. (*Id.* at 4.)[2]

On February 3, 2020, South Carolina District Court Judge Anderson held a discovery conference in the Civil Case during which Dawkins's counsel explained that while he was constrained from complying with the plaintiff's discovery requests by the protective orders in the above-captioned criminal cases, he considered the materials "cumulative" in light of the evidence that was disclosed at trial, although he also believed it was "exculpatory" as to his client. (Def. Mtn., Ex. A. at Tr. 23-25.) After the conference, Judge Anderson issued a written order denying Bowen's motion to compel, because, "[a]s a matter of comity and courtesy," "the Court will not compel production of discovery materials shielded by such protective order." (Def. Mtn., Ex. B at 3.) Judge Anderson further instructed the parties that to the extent the parties sought those materials, they should file a motion with the courts that issued the protective orders in the criminal cases to request authorization to disclose those materials within fourteen days, and that "[s]hould relief be granted, this Court anticipates filing its own protective order with substantially similar limitations to effectuate the same protections." (*Id.*).

The Defense Motion, which seeks permission to disclose all of the criminal discovery produced in the above-captioned cases to all of the other parties in the Civil Case, followed. Although Dawkins claims he "is not requesting in this motion any relief that would disturb the confidentiality of the [materials]," (Def. Mtn. 6), he acknowledges in his motion that granting his request would permit the sharing of materials with multiple parties who had not been privy to the materials previously, and the materials could be shared further with other witnesses and potentially disclosed at public proceedings in the Civil Case.

---

[1] Certain materials produced in discovery that were not entered into evidence, but were governed by the protective orders, were filed under seal in the *Gatto* case. The National Collegiate Athletic Association ("NCAA") and Oath, Inc. both previously filed motions to intervene and unseal certain of those materials. In denying those motions, Judge Kaplan explained that the privacy interests of third-parties referenced in the sealed materials weighed against the public disclosure of the materials sought. *See United States v. Gatto*, 2019 WL 4194569 (S.D.N.Y. Sept. 3, 2019).

[2] The Defense Motion does not detail the specific requests for production of documents that Dawkins failed to respond fully to, nor the types and categories of materials that Dawkins was unable to provide due to those materials being governed by the protective orders discussed herein.

**B. Discussion**

The defendants' application fundamentally misapprehends the nature and purpose of the criminal discovery process and the protective orders entered, on consent, in these cases, which governed certain materials produced in discovery.

There is good reason why the parties agreed to and both Courts entered protective orders that prevent the defendants from disclosing materials obtained through the process of criminal discovery for any reason unrelated to the criminal case. To allow the defendants to use criminal discovery and/or disclose materials for any other reason would permit the dissemination of a vast swath of materials, including those that are confidential due to witness privacy interests. Indeed, as Judge Kaplan previously ruled, in denying the NCAA's and Oath's motions to unseal certain materials in *Gatto*, third-parties have a strong interest in maintaining their privacy interest in these sorts of materials. *See Gatto*, 2019 WL 4194569.

The defendants do not cite any opinions to support the argument that a criminal defendant should be permitted to share and/or utilize criminal discovery materials in a civil case. Precedent on this issue appears to be somewhat sparse, perhaps because of the rarity of such incidents. *See United States v. Calderon*, 15 Cr. 025, 2017 WL 6453344, at *3 (D. Conn. Dec. 1, 2017) (discussing the relative lack of specific guidance in the context of an application to modify protective orders in criminal cases); *see also United States v. Morales*, 807 F.3d 717, 721 (5th Cir. 2015) ("[m]otions to modify protective orders in criminal cases appear to be infrequent"). But there are decisions rejecting defense attempts to modify protective orders in order to assist in pursuit of civil claims. *See Calderon*, 2017 WL 6453344, at **5-6 (denying a defendant's application for modification of a criminal protective order so he could use certain discovery materials in a FOIA suit); *United States v. DeNunzio*, 450 F. Supp. 3d 86, 91-92 (D. Mass. March 27, 2020) (denying a defendant's motion to modify two protective orders in his criminal case for the purpose of pursuing claims in a civil action, even after the completion of trial).

Although in certain circumstances a civil defendant may be required to produce materials obtained in criminal discovery to a civil plaintiff, the Second Circuit has explained that such a decision requires a careful analysis based on a complete record–which is notably lacking here–that can weigh the relevancy of the materials to the civil proceeding and the privacy interests of third-parties at issue. *See S.E.C. v. Rajaratnam*, 622 F.3d 159 (2d Cir. 2010) (ruling that "the district court exceeded its discretion in ordering disclosure of wiretap materials without regard to relevancy, particularly in a case involving a large number of recordings intercepting conversations of innocent parties").

The civil litigants provide no good cause for a grant of their request to receive all of the criminal discovery, particularly where such materials implicate numerous third-parties and they seek to share that information irrespective of any particularized showing of relevancy to the Civil Case. The protective orders in this case were not blanket orders, but were limited to certain categories of information. *See Calderon*, 2017 WL 6453344, at *3. The Government relied on those orders to produce materials in an expeditious and un-redacted fashion for the purpose of complying with the defendants' discovery requests. *Id.* at *4. Even if the District of South

The Honorable Lewis A. Kaplan
The Honorable Edgardo Ramos
March 12, 2021
Page 4

Carolina entered a similar protective order over the materials, that would not preserve the confidentiality of the materials and would still frustrate the provisions of the protective orders requiring the destruction or return of the confidential materials when they were no longer needed in the criminal cases.  To the extent the civil litigants consider the Government's criminal discovery relevant in their Civil Case, there is nothing preventing them from seeking to obtain materials and information from third-parties themselves, as their motion suggests they have done to a significant extent already (*see* Def. Mtn. 6).  Although the civil litigants argue that unspecified materials subject to the protective orders nonetheless would be useful in the Civil Case, Dawkins's counsel previously acknowledged that in light of the trial evidence and testimony, additional materials would be "cumulative" (Def. Mtn., Ex. A. at Tr. 23-25),  suggesting that these additional materials are not particularly necessary to the Civil Case.  Moreover, to the extent the civil litigants are "attempting to get around obstacles in discovery in a separate case and access documents the party would not otherwise have a right to, the court should not modify the protective order." *Calderon*, 2017 WL 6453344, at *5.  There is simply no reason that private individuals, let alone a defendant, should be able to convert the Government's investigation and do an end-run around restrictions that apply to material obtained in that investigation, including under Rule 6(e) of the Federal Rules of Criminal Procedure, the Privacy Act of 1974, Title III, and other policies of the Department of Justice, in order to benefit themselves in civil litigation.

For the foregoing reasons, the Defense Motion should be denied.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

By: _____
Robert Boone
Noah Solowiejczyk
Eli J. Mark
Aline R. Flodr
Assistant United States Attorneys
Southern District of New York
Tel: (212) 637-2431

cc: Counsel of record (by ECF)